UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NANCY XOL RAX, individually, and on behalf of her minor daughter DS, ZULEYMA R. LOPEZ on behalf of her minor son JS, GLORIA TZI, and PEDRO SONTAY, JUAN SONTAY, and MARTHA SONTAY, as individual heirs of MARIO SONTAY, <br><br>And<br><br>INGRID SUSANA BOTZOC TZI, DOROTEA OCH, EMILIANO COC CHUB, and EMILIANO COC OCH, as individual heirs of MARIANO COC,<br><br>    Plaintiffs,<br><br>    v.<br><br>BIG D BUILDERS, INC.; STEEL BUILDING SYSTEMS, LLC; INLAND CRANE, INC.; WALKER STRUCTURAL ENGINEERING, P.C.; SPECK STEEL, LLC; NCI GROUP, INC. d/b/a METAL BUILDING COMPONENTS,<br><br>    Defendants. | Case No. 1:24-cv-00319-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

There are two motions before the Court: (1) Defendant Steel Building's

Motion to Dismiss and (2) Plaintiff's Motion to Strike the Declaration of Steel

**MEMORANDUM DECISION AND ORDER - 1**

Building's Counsel. For the reasons explained below, the Court will deny the Motion to Dismiss and find the Motion to Strike moot.

## BACKGROUND

This case stems from an airplane hangar collapse and the deaths of two men—Mario Sontay Tsi and Mariano Coc Och—who Plaintiffs claim were working on the hangar at the time of incident. *Second Amended Compl*. ¶ 1, Dkt. 36 at 2. Plaintiffs, as heirs and representatives of heirs of the deceased men, sued several companies, including Defendant Steel Building Systems, LLC, who designed and engineered the hangar. *Second Amended Compl*. ¶ 2, 5-10, Dkt. 36 at 2-3. Two of the Plaintiffs are Nancy Xol Rax and Ingrid Susana Botzoc Tzi, the widowed wives of Mario and Mariano, respectively. *Second Amended Compl*. ¶ 18, 26, Dkt. 36 at 4-5.

Plaintiffs sued in federal court based on foreign diversity jurisdiction, as they claimed to be Guatemalan and Salvadoran citizens suing companies based in the United States. *Second Amended Compl*. ¶ 37, Dkt. 36 at 6; *see* 28 U.S.C. § 1332(a)(2). Nancy and Ingrid provided affidavits in which they each attested to being a Guatemalan citizen domiciled in Guatemala. *Nancy Affid.* ¶ 2, Dkt. 87-1 at 10; *Ingrid Affid.* ¶ 2, Dkt. 87-1 at 19. They each also claimed they were born in Guatemala and never lived outside of Guatemala. *Nancy Affid.* ¶ 1, 3, Dkt. 87-1

at 10; *Ingrid Affid.* ¶ 1, 3, Dkt. 87-1 at 19. And each of them stated they had never entered the United States or applied for or obtained a U.S. visa. *Nancy Affid.* ¶ 4, Dkt. 87-1 at 10; *Ingrid Affid.* ¶ 4, Dkt. 87-1 at 19.

Steel Building then filed a motion to dismiss Plaintiffs' suit under Rule 12(b)(1) for lack of subject matter jurisdiction. *Steel Building's Mot. To Dismiss*, Dkt. 82. Along with the motion, Steel Building filed a declaration from its counsel. *Thielbahr Decl.*, Dkt. 84. In it, counsel stated that one of the other Defendants in this case, Big D, provided employment records for Mario and Mariano to each of the parties. *Thielbahr Decl.* at ¶ 11, Dkt. 84 at 3; *see Thielbahr Decl. Exs. E & F*, Dkts. 84-5, 84-6. According to Steel Building, those documents contained scanned copies of permanent resident cards for both Mario and Mariano. *Steel Building's Memo. for Mot. To Dismiss* at 4-5, Dkt. 83 at 4-5.

Steel Building further noted that the permanent resident category listed on Mario's card was "IR6," and on Mariano's the category was "IR1." *Steel Building's Memo. for Mot. To Dismiss* at 7, Dkt. 83 at 7; *see* Dkt. 84-5 at 7; Dkt. 84-6 at 4. It added that the meaning of these codes is available on the U.S. Citizenship and Immigration Services' website, which shows for both "IR1" and "IR6" that the permanent resident was "admitted or adjusted as a spouse of a U.S. citizen married more than 2 years at the time of admission." *Steel Building's*

*Memo. for Mot. To Dismiss* at 7, Dkt. 83 at 7; *see* USCIS, Chapter 2 – Lawful Permanent Resident Admission for Naturalization, https://www.uscis.gov/policy-manual/volume-12-part-d-chapter-2. Steel Building argued that the permanent resident cards thus revealed that Nancy and Ingrid were U.S. citizens and so Plaintiffs had not established a factual basis for foreign diversity jurisdiction.[1] *Steel Building's Memo. for Mot. To Dismiss* at 7, Dkt. 83 at 7.

Plaintiffs responded to Steel Building's Motion to Dismiss by arguing that neither Nancy nor Ingrid were U.S. citizens. *Plaintiffs' Response to Mot. to Dism.* at 3-4, Dkt. 87 at 3-4. In support, Plaintiffs filed numerous documents, including two reports and a brief professional profile from William Fong, Esq., who Plaintiffs described as "a recognized expert in U.S. Citizenship and Immigration Services . . . security documents." *Plaintiffs' Response to Mot. to Dism.* at 3, Dkt. 87 at 3; *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27-35. According to his profile, Mr. Fong was the managing partner of Fong Ilaga, "a firm specializing in corporate immigration law," and a professor at Thurgood Marshall School of Law. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 35. Listed

---

[1] Steel Building's argument is based on the permanent resident cards and their content, not on any of the other employment documents produced by Big D, which presumably are all derivative of the information on the permanent resident cards. *Steel Building's Memo. for Mot. To Dismiss*, Dkt. 83 at 7.

**MEMORANDUM DECISION AND ORDER - 4**

under his areas of competency in immigration law are "employment-based & family-based permanent residence." *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 35.

In his reports, Mr. Fong explained that he reviewed the scanned copies of both Mario's and Mariano's permanent resident cards and noticed several "anomalies" on each card that were "inconsistent" with what he would expect to observe on validly issued permanent resident cards. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27, 31. Addressing Mario's card first, Mr. Fong listed four irregularities. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27-28. First, he pointed out that the name on the card, "Mario Rigoberto Sontay Tzi" did not match the name contained in the wavy line above the picture on the front of the card. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27. Mr. Fong observed that the name in that wavy line appeared to be "Martinez Lopez Daniel." *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27.

Second, Mr. Fong noted that the picture on the front of the card was "not a standard USCIS digitized photograph." *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27. He stated that USCIS requires that such a photograph be "centered" with the individual "facing forward" and their "full face visible," including their ears. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27.

MEMORANDUM DECISION AND ORDER - 5

He observed that the photograph on Mario's card did not show both of the individual's ears and did not appear to be a full-frontal image. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27.

Third, Mr. Fong noted that the typeface of the headings on the front of the card was inconsistent with each other. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28. He explained that the heading "Category" was in bold unlike the other headings. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28. Fourth, Mr. Fong identified two anomalies on the back of the card. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28. First, he noted the line indicating the revision date for the edition of the card was in bold typeface, whereas the notation "Form I-551" was not bolded. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28. Second, he observed that the revision date listed was "02-2016," despite the issued-on date on the front of the card reading "05/07/15," which was prior to the card's edition date. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28.

As for Mariano's card, Mr. Fong noted eight anomalies, which fit into two categories. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. The first category included inconsistencies in the format of the card. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. Mr. Fong stated that the

format of the card did not reflect changes in the format that were implemented before the date the card was issued. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. He then identified four aspects of the card that were inconsistent with the new format: (1) the background, (2) the signature line, (3) the lack of a small photograph on the back side of the card matching the one from the front, and (4) the "magnetic/optical data strip." *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32.

The second category contained four anomalies identified by Mr. Fong that he did not explicitly link to the new format. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. First, he noted that the birth year listed on the card did not overlap the photograph as much as he would have expected to observe. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31. Second, he characterized the photograph as non-standard because it contained a noticeable shadow over the lower portion of the individual's face. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31. Third, he stated that the expiration date on the card was inconsistent with standard practice, as the "vast majority" of cards reflect a full ten-year period from issuance to expiration but this card's expiration date was eighteen days short of ten years. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 32. Fourth, Mr. Fong pointed out that the back of the card appeared to be

missing the typical "Form I-551" notation and the corresponding revision date. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 32. For each card, Mr. Fong concluded: "[b]ased on my review of the scanned I-551, the observed anomalies and my experience with USCIS document[s], it is my professional opinion that this 'I-551' is a document purporting to be an officially issued Form I-551." *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 28; *see Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 32.

Plaintiffs also filed a Motion to Strike Steel Building's declaration of counsel. *Motion to Strike*, Dkt. 88. In this motion, Plaintiffs argued that assertions of counsel in the declaration were not based on personal knowledge, that the declaration contained inadmissible expert testimony from a lay witness, and that the permanent resident cards referenced in the declaration were inadmissible because they contained hearsay evidence and because they were counterfeit. *Motion to Strike*, Dkt. 88.

In Steel Building's reply in support of its Motion to Dismiss, it argued that although it submitted the permanent resident cards through a declaration of counsel, that declaration did "not provide any testimony regarding the Personnel Documents, the immigration documents contained therein, or the laws and policies

analyzing the same."[2] *Steel Building's Reply*, Dkt. 89 at 6. Steel Building asserted that it moved to dismiss based not on the opinions of counsel but rather on the employment documents, particularly the permanent resident cards and the codes on those cards, the meaning of which was available from public information provided by the government. *Steel Building's Reply*, Dkt. 89 at 6-7. Steel Building further argued that its counsel had personal knowledge of how she came into possession of the employment documents, and that it was this personal knowledge, not any knowledge about the information contained within the documents that counsel sought to convey through the declaration. *Steel Building's Reply*, Dkt. 89 at 6. Steel Building also claimed that counsel did not provide expert witness testimony in the declaration, as "no such immigration related testimony" appeared in that filing and no "opinions as to the USCIS documents" existed within either the declaration or the Motion to Dismiss. *Steel Building's Reply*, Dkt. 89 at 7.

Following Steel Building's reply, Plaintiffs filed amended affidavits from Nancy and Ingrid in which they each stated that they were citizens of Guatemala and not U.S. citizens. *Nancy Suppl. Affid.* ¶ 6, Dkt. 100 at 2; *Ingrid Suppl. Affid.* ¶ 6, Dkt. 100-1 at 2.

---

[2] Steel Building also filed a response to Plaintiffs' Motion to Strike, the content of which was nearly identical to its reply. *See Steel Building's Memo. In Opp. to Motion to Strike*, Dkt. 93.

## LEGAL STANDARD

Federal courts have limited subject matter jurisdiction, and the plaintiff bears the burden to prove that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Where, as here, a plaintiff invokes foreign diversity jurisdiction, it must demonstrate complete diversity between the parties, meaning that "each plaintiff must be diverse from each defendant." *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001). That is, a U.S. citizen cannot be on both sides of the case. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992). This is true regardless of a party's foreign citizenship or foreign domicile. *See Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) ("an American living abroad is not by virtue of that domicile a citizen or subject of the foreign state in which he resides so as to permit invocation of the alienage jurisdiction prescribed in 28 U.S.C. § 1332(a)(2)").

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction may be either facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A "factual" challenge, such as Steel Building's here, contests the truth of plaintiff's factual allegations by introducing evidence outside the pleadings. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In response, a plaintiff must support its assertion of

jurisdiction with "competent proof" under the same evidentiary standard that governs in the summary judgment context. *Hertz Corp. v. Friend,* 559 U.S. 77, 96-97 (2010); *see* Fed. R. Civ. P. 56(c).

Generally, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself. *See Safe Air for Everyone,* 373 F.3d at 1039. In so doing, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## ANALYSIS

The Court will first address Steel Building's Motion to Dismiss and assume, without finding, that it can consider the evidence Plaintiffs seek to strike, namely the declaration and the scanned copies of the permanent resident cards. Because the Court finds, as explained below, that Plaintiffs have met their burden to show the requirements are met for foreign diversity jurisdiction, the Court denies the Motion to Dismiss and determines that the Motion to Strike is moot.

In support of their assertion that Nancy and Ingrid are foreign citizens, Plaintiffs submitted affidavits from both women in which they each claimed to be citizens of Guatemala and not citizens of the United States. *Nancy Suppl. Affid.* ¶ 6,

Dkt. 100 at 2; *Ingrid Suppl. Affid.* ¶ 6, Dkt. 100-1 at 2. The only evidence that

potentially undermines the veracity of these statements are the copies of Mario and

Mariano's permanent resident cards. The codes on these cards show that each was

issued based on the applicant's marriage to a U.S. citizen, which seems to indicate

that Mario and Mariano's wives—Nancy and Ingrid—are U.S. citizens.

*See Thielbahr Decl. Exs. E & F*, Dkts. 84-5, 84-6; USCIS, Chapter 2 – Lawful

Permanent Resident Admission for Naturalization, https://www.uscis.gov/policy-

manual/volume-12-part-d-chapter-2. However, the Court finds Mr. Fong's analysis

of these cards to be credible and thus affords the cards little evidentiary weight.[3]

*See Safe Air for Everyone,* 373 F.3d at 1039-40 (noting the Court may resolve

factual disputes about the existence of jurisdiction).

     Mr. Fong's opinion that neither card was issued by the government is

persuasive. He identified several aspects of each card and logically explained why

he believed those aspects were inconsistent with how a permanent resident card

should appear. *See Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27-28,

31-32. As for his report on Mario's card, Mr. Fong's observation that another

person's name appeared on the wavy-line security feature of the card is a strong

---

[3] Steel Building does not assert that the Court cannot or should not consider Mr. Fong's reports.

indication that the card is not genuine. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27. Mr. Fong further supported this conclusion by pointing out that the typeface of the headings on the card was inconsistent, that the photograph on the card did not comply with standard conventions because it was not a full-frontal view, and that the revision date on the back of the card was later in time than the date the card was issued. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 27-28. These observations each support the conclusion that the card is not genuine and taking them all into consideration makes that conclusion nearly unavoidable.

Mr. Fong's report on Mariano's card is similarly persuasive. He stated that the card was issued several months after the government implemented a revised format for such cards but that the format of Mariano's card was inconsistent with the new format. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. Rather than state that this definitively showed the card to be counterfeit, Mr. Fong explained that it was possible that a genuine card issued at the same time as Mariano's could have been printed on old stock and thus reflected the old format. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31. This candor lends Mr. Fong's report credibility.

In addition, Mr. Fong identified several other anomalies on Mariano's card that were not contingent on the change in format. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. These included the birth year listed on the document not overlapping the picture to a typical degree, the shadow on the lower part of the face of the individual in the picture, the back of the card missing information, and the inconsistency between the normal ten-year validity period for a permanent resident card and the period on this card, which was eighteen days short of ten years. *Plaintiffs' Response to Mot. to Dism. Ex. E*, Dkt. 87-1 at 31-32. These factors provide strong evidence that the card is not genuine, especially when considered all together.

Moreover, Steel Building does not offer an opinion countering that of Mr. Fong's, nor does it attempt to undermine the points he has made or the opinions he has offered in any other way. *Steel Building's Mot. to Dismiss*, Dkt. 82; *Steel Building's Reply*, Dkt. 89. In fact, Steel Building concedes that it has not offered any expert testimony or any testimony relevant to the interpretation of immigration documents or security features of such documents. *See Steel Building's Reply*, Dkt. 89 at 7. The Court therefore gives the copies of the permanent resident cards very little evidentiary weight.

**MEMORANDUM DECISION AND ORDER - 14**

As a result, Nancy and Ingrid's statements that they are Guatemalan citizens and not citizens of the United States are left essentially uncontested. The Court therefore finds that Plaintiffs have proven by a preponderance of the evidence that Nancy and Ingrid are foreign citizens for purposes of foreign diversity jurisdiction and denies Steel Building's Motion to Dismiss. Because the Court denies the Motion to Dismiss even after considering the evidence Plaintiffs sought to strike, the Motion to Strike is moot.

## ORDER

**IT IS ORDERED that:**

1. Defendant Steel Building Systems, LLC's Motion to Dismiss (Dkt. 82) is **DENIED**.

2. Plaintiffs' Motion to Strike (Dkt. 88) is **MOOT**.



DATED: January 2, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 15**