HONORABLE B. LYNN WINMILL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

NANCY XOL RAX, individually, and on behalf of her minor daughter DS, ZULEYMAN R. LOPEZ on behalf of her minor son JS, GLORIA TZI, and PEDRO SONTAY, JUAN SONTAY, and MARTHA SONTAY, as individual heirs of MARIO SONTAY,

And

INGRID SUSANA BOTZOC TZI, DORTEAO OCH, EMILIANO COC CHUB, and EMILIANO COC OCH, as individual heirs of MARIANO COC,

                    Plaintiffs,

        v.

STEEL BUILDING SYSTEMS, LLC, and INLAND CRANE, INC.,

                    Defendants.

NO. 1:24-CV-00319-BLW

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

COMES NOW Defendant Steel Building Systems, LLC ("SBS"), by and through its attorney of record, Gordon Rees Scully Mansukhani, LLP, and respectfully moves this Court, pursuant to Federal Rule of Evidence 702, 704, and *Daubert*, to grant its Motion to Exclude and/or Limit the Expert Witness Testimony of Steve Call.

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 1

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

# I.    STATEMENT OF THE ISSUE

As its liability/causation expert, the Plaintiffs have disclosed Steve Call ("Mr. Call") to opine on the Boise Airport Hangar Collapse (the "Collapse").    Declaration of Grace ("Maldonado Decl."), at ¶ 2.  An expert witness opening report has been disclosed for Mr. Call (the "Report"), and the expert witness deposition of Mr. Call has been taken (the "Deposition"). *See Id*. at ¶ 3, Exhs. A & B (Copies of the Report and Deposition).  Mr. Call did not issue any rebuttal expert report to any expert disclosed in this matter by previous or current Defendants. *See Id*. at ¶ 3.  In the Report and Deposition, Mr. Call opines, as it relates to SBS, as follows:

> SBS was, in [Mr. Call's] opinion, negligent in the following ways:
>
> - By significantly changing the Install Set from the Permit Set, the steel structure SBS provided was not in compliance with the building permit.
> - By providing the lifting support detail in the Install Set, which was deficient in its design and contributed to the failure of numerous essential bracing cables.
> - By providing several bracing members with welds which were of poor quality (at least two of which failed) eliminating any stabilizing effect from those braces.
> - After becoming aware of the numerous bracing failures, by not informing Big D of the need to stop the erection process until the cause of the bracing failures could be determined and appropriate corrective measures taken.

Maldonado Decl., at Exhibit A, p. 26 (brackets added).

Mr. Call further concludes that:

> [T]he collapse was the result of the willful, intentional, and reckless actions of Steel Building Systems as described above and that the death of the plaintiffs was proximately caused by the willful and reckless acts of Steel Building Systems. This report contains clear and convincing evidence that Steel Building Systems' officers and employees engaged in conduct knowing that injury or death to the plaintiffs was substantially likely to occur.

*Id*. at Exhibit A, p. 16.

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 2

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

However, as it relates to each of the claimed "negligent" acts of SBS, Mr. Call has failed to provide any analysis as to whether the act resulted in and/or contributed to the Hangar's Collapse, nor does Mr. Call provide a proper basis for his opinion. In its Motion, SBS challenges Mr. Call's opinion on four separate grounds: (1) for providing testimony which is not based on any form of scientific methodology or analysis, (2) failing to provide testimony which may be of assistance to the jury at trial, (3) providing testimony outside of his realm of expertise, and (4) making legal conclusions which are in the province of the jury and/or judge.

## II.    RULE 702 STANDARD

Whether and to what extent Steve Call may testify at trial is addressed under the well-known standard first enunciated in *Daubert* and its progeny, but now set forth in Rule 702 of the Federal Rules of Evidence. Rule 702 establishes several requirements for permitting expert opinion. *See TB Holding Co., LLC v. J&S Siding*, 4:22-CV-00307-BLW, 2025 WL 2146164, at *1 (D. Idaho July 29, 2025) (*citing* Fed. R. Evid. 702). Under this rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise" provided that:

(a)    the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue;

(b)    the testimony *is based on sufficient facts or data*;

(c)    the testimony is the *product of reliable principles and methods*; and

(d)    the expert's opinion reflects a *reliable application of the principles and methods* to the facts of the case.

*See* Fed. R. Evid. 702 (emphasis added).

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 3

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

In other words, to be admissible, an expert's testimony must "rest on a reliable foundation and [be] relevant to the task at hand." *Hyer v. City and Ctny of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc*, 26 F.4th 1017, 1024 (9th Cir. 2022)). Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)). The party seeking to introduce the expert testimony bears the burden of proving its admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

The reliability inquiry is fact-specific and depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999). To guide this reliability analysis, the Supreme Court has outlined several factors to use when determining whether expert testimony is reliable. *Daubert*, 509 U.S. at 592–94. These factors include "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (internal cite omitted).

The foremost requirement of Rule 702 is that the expert testimony "will assist the trier of fact" to understand the evidence or to determine a fact in issue. *See Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (citing Rule 702). The admissibility of expert testimony under Rule 702 rests within the broad discretion of the Court, which must act as a "gatekeeper" under Fed. R. Evid. 104(a) to exclude unqualified or unreliable expert testimony.

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 4

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

*See Kumho Tire Co.*, 526 U.S. 147-49 (1999); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420–21 (9th Cir. 1998). Whether the district court applied the correct legal standard under *Daubert* is reviewed de novo, and the district court's decision to admit or deny expert testimony is reviewed for abuse of discretion. *See Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457, 462 (9th Cir. 2014) (en banc), overruled on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc).

### III. LEGAL ANALYSIS AND APPLICATION

**A. As the Testimony of Steve Call Fails to be Based on any Scientific Methodology or Analysis it Must be Excluded for Failing to Comply with Federal Rule of Evidence 702.**

An expert cannot "waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under Daubert." *J.R. Simplot Co. v. McCain Foods USA, Inc.*, 713 F. Supp. 3d 904, 970 (D. Idaho 2024), aff'd, 2024-1845, 2026 WL 322482 (Fed. Cir. Feb. 6, 2026) (citing *Robertson Transformer Co. v. General Electric Co.*, 2016 WL 4417019, \*4 (N.D. Ill. Aug 19, 2016)).

In the Call Report, Mr. Call opines that SBS was "negligent" in four separate ways; however, Mr. Call admittedly failed to conduct any analysis as to whether any of the alleged negligent acts by SBS contributed to and/or caused the Hangar's Collapse. Indeed, at no point does Mr. Call apply any form of scientific methods, analysis, or reasoning to any of the allegations against SBS in the Report, nor did Mr. Call attempt to apply any methodology or reasoning to his conclusions during the Call Expert Deposition. Rather, Mr. Call, without any support, simply outlines what acts should be considered "negligent". Each of the allegations and Deposition testimony related to the same will be addressed in turn below:

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 5

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

i.      <u>Call Opinion 1: Changes between the Install Set from the Permit Set Caused Permit Set not to be in Compliance with the Building Permit.</u>

According to Mr. Call, there were four changes between the Install Set and the Permit Set. Maldonado Decl., at Exh. A, p. 24. While having noted there were changes between the two sets of plans, Mr. Call expressly states that "[i]t is not the intent of [the] report to evaluate if the changes made were adequate from an engineering standpoint but rather to indicate the quantity and significance of changes and show that every frame column and rafter was modified." *Id*. at Exh. A, pp. 24-25. During the Deposition, Mr. Call was asked to clarify this statement and was specifically asked to "clarify [] the scope of [the] evaluation]":

> **Question:** So that first sentence, can you clarify for me the scope of your evaluation? Because I think is what you just said is, look, there were exchanges with -- between the permit set and install set, one of them being this rod bracing. And we can talk about that, but *are you noting the significance of the changes made* --
>
> **Answer:** I am --
>
> **Question:** -- *were the cause of the collapse or are you just saying it was negligence which is a legal term for them not to be reviewed and stamped*? I'm just trying to understand the scope of your opinions.
>
> **Answer:** Right. Okay. So as far as -- what I'm saying is that I do not have the -- *I did not review them to determine "Is this revised design adequate*?" I reviewed it -- or, I said the purpose of this -- these comments is to say they made -- they –their -- *just the fact that they changed them was a negligent act*.

Maldonado Decl., at Exh. B, pp. 38:20-39:13 (brackets and emphasis added).

> **Question:** So what you're -- when we go through these bullets -- and we'll go through them and I don't want to keep you here all day -- because I definitely want to understand them, it sounds like what you're saying, *you're noting the changes, but you didn't do the analysis to determine whether it was the but-for cause of the*

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 6

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

*collapse.*

**Answer:** Whether the change was the cause of the collapse?

**Question:** Yes, correct.

**Answer:** Correct.

Maldonado Decl., at Exh. B, pp. 42:16-43:1.  Call further reiterates the above, in the same line of questioning by stating, "I said I'm not evaluating whether SBS made the – whether their design – I'm not saying that their design was incorrect but the fact that they changed it".  *Id*. at pp. 42:1-7.

Mr. Call conducted no analysis to determine whether the changes to the Permit Set or Install Set were contributing factors to the collapse, nor was there any methodology applied. Rather, Mr. Call simply states that the act of changing the Install Set from the Permit Set constituted negligence, without citing to or applying any standard of care or methodology. Moreover, Mr. Call cites no code or statute, nor has any opinion, regarding any argument that changes between a Permit Set and an Install Set could constitute negligence *per se.  See e.g.* Maldonado Decl., at Exh. A & B.  The entirety of Mr. Call's first opinion as it relates to SBS is conclusory and void of any reasoning, analysis, or methodology, and, as such, must be excluded for failure to comply with Federal Rule of Evidence 702.

ii.    Call Opinion 2: Providing Lifting Support Detail in the Install Set, which was Deficient in its Design.

According to Mr. Call, the design for the Lifting Support Detail contained within the Install Set provided by SBS to Big D contained a deficient design.  However, no analysis or methodology was employed by Mr. Call to reach said conclusion.  More importantly, Mr. Call

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 7

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

did not conduct any type of formal analysis to determine whether the allegedly defective design contributed to and/or caused the Hangar Collapse in the Report, and confirmed the same in deposition testimony. *See e.g.* Maldonado Decl., Exh. A. The referenced testimony has been provided below:

> **Question:** And did you do any analysis if these lifting support cables breaking was the cause of the collapse?
>
> **Answer:** *No, I did not do any formal analysis.* However, the purpose of the cables is to hold them in proper positions.
>
> **Question:** Right.

Maldonado Decl., Exh. B, at p. 61:7-13 (emphasis added).

As Mr. Call conducted no analysis to determine whether the allegedly defective design related to the Lift Support Detail contributed to and/or caused the Collapse, and applied no form of methodology, the testimony of Mr. Call must be excluded for failing to comply with Federal Rule of Evidence 702.

iii.    Call Opinion 3: Providing Several Bracing Members with Welds that were of Poor Quality.

Mr. Call further opines that the weld quality on the Lift Support Detail was of poor quality, but conducted no analysis to determine whether (1) is the weld was actually of poor quality, or (2) whether the allegedly poor-quality weld contributed to and/or caused the Collapse.

> **Question:** Okay. And I think you have one more. But, you know, you mentioned the bracing members with welds were of poor quality?
>
> **Answer:** Yes.
>
> **Question:** Did you do any forensic analysis – and I think it's Exhibit C to your report. I can introduce it. *Did you do any analysis of the*

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

(CASE NO. 1:24-C-00319-BLW) - PAGE 8

*welds, like structurally?*

**Answer:** *No, I did not*. I did -- however, I am not a certified welder inspector. I have had some additional training in weld inspection. I took – it was a multiday -- I'm got going to use the word "class" because it was almost a lab. It was hands on. We were performing inspections under the direction of a -- one of the local testing agencies and they would -- so I do have knowledge in welding.

And the first inspection that is made on any weld, they emphasize "This is a visual inspection." And by visually looking at that weld, we can see two things: We can see that the weld is not -- is not uniform. It's -- it's a very – anyone who has looked at welds -- and I've looked at a lot of welds in my 36 years of experience -- you can very quickly see is this a good weld or a bad weld. *It doesn't -- you can't say are there imperfections in it or not without a more detailed inspection, but you can very quickly say this is not a good weld.* The other thing that I saw and is clear on the -- the details, there's Exhibit C. … [.]

Maldonado Decl., at Exh. B, pp. 65:16-66:19 (emphasis and brackets added).

**Question:** Okay. *And you didn't do any analysis of whether -- I mean, do you know if these welds broke upon impact prior to -- or any analysis of whether they caused the collapse?* You just did a visual observation of them after the fact?

**Answer:** *I did a visual observation, and no, I do not know whether they failed as a result of the collapse or not. I just stated that they were faulty welds. They did not make the building -- they did not help the building stand up.*

Maldonado Decl., at Exh. B, p. 69:9-18 (emphasis added).

In addition to acknowledging that no analysis was conducted on the welds outside of a preliminary visual inspection, Mr. Call further testified that the welds were not related to the structural stability of the Hangar. *Id*. (stating "I do not know whether they failed as a result of the collapse or not. I just stated that they were faulty welds. They did not make the building -- they did not help the building stand up"). As Mr. Call conducted no analysis to determine

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 9

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

whether the allegedly "poor welds" contributed to and/or caused the Collapse, and applied no form of methodology, the testimony of Mr. Call must be excluded for failing to comply with Federal Rule of Evidence 702.

      iv.      <u>Call Opinion 4: By Not Informing Big D of the Need to Stop the Erection Process Until the Cause of the Bracing Failures Could be Determined and Corrected</u>.

The final opinion offered by Mr. Call related to SBS is that SBS should have informed Big D of the need to stop the erection process following the failure of select bracing. Maldonado Decl., at Exhibit A, p. 26. However, Mr. Call provides no standard and/or analysis of a standard to support this proposition, and further admits that the onerous task of ensuring the stability of the Hangar during erection was the responsibility of Big D and Inland Crane.

> **Question:** Right. But even if some of these cables broke during the erection process, ***Big D and Inland Crane are still responsible to hold this thing up until it's fully erect, right?*** MR. NELSON: Object to the form of the question. THE WITNESS: What's that?

> **Question:** (BY MS. THIELBAHR): You can answer.

> **Answer:** ***They are responsible. Big D is responsible to have everything in position to and until the building is fully stabilized and everything is in its place. That is correct, that is one of their responsibilities.*** SBS's responsible for the design that they provide on the -- on the drawings. So if their design is faulty and the cable or the connection fails, then they have culpability for providing a faulty design, okay? And so there is -- as I stated, I believe that there is negligence on the part of SBS for -- in this case for providing a design that is clearly faulty because it broke under the conditions that it was supposed to be used for, namely lifting and positioning. So they provided that design, it's on their drawings, they're responsible for it.

> **Question:** ***And did you do any analysis if these lifting support cables breaking was the cause of the collapse?***

> **Answer:** ***No, I did not do any formal analysis.*** However, the

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 10

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

purpose of the cables is to hold them in proper positions.

Maldonado Decl., pp. 60:7-61:12 (emphasis added).

Not only does Mr. Call acknowledge that the stability of the Hangar during the erection was the responsibility of Big D and Inland Crane, but he specifically acknowledges that Big D had sole control over the Hangar.  Maldonado Decl., at Exh. A, pp. 28 (Call Report stating, "Big D had complete control and responsibility over the erection of the steel structure including the use of temporary bracing or guy wires as well as the sequence in which the bracing elements were installed[]").

As no analysis or methodology was applied by Mr. Call in reaching any of the proposed conclusions, Mr. Call's testimony must be excluded in its entirety for failing to comply with Federal Rule of Evidence 702.

**B.     The Testimony of Steve Call Must be Excluded as it Fails to Provide any Testimony that May be of Assistance to the Jury at Trial.**

"Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry."  *Hardy v. Kish*, 1:23-CV-00306-BLW, 2025 WL 2051775, at *2 (D. Idaho July 22, 2025) (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002)).  To be relevant, the testimony must logically advance a material aspect of the party's case.  *See* Fed. R. Evid. 401, 402; *Daubert*, 43 F.3d at 1315.  Here, the pertinent inquiry is the causation of the Hangar Collapse.  *See e.g.* ECF No. 36 at ¶¶ 116, 143 (stating "SBS's design flaws, design defects, manufacturing defects, and negligence was a proximate and direct cause of the Hangar collapsing and Mario and Mariano's deaths" and "[t]he defective condition [of the lift supports

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 11

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

and welds] was a direct and proximate cause of Mario and Mariano's wrongful deaths") *see also Id*. at ¶¶ 161-166.

As outlined in detail within Subsection A above, there has been no analysis as to whether any of the alleged acts or omissions committed by SBS caused the Hangar Collapse, or, at a minimum, contributed to the Hangar Collapse. As Mr. Call does not provide any testimony that logically advances the Plaintiffs' case against SBS, it cannot be said that the testimony of Mr. Call will assist the trier of fact in understanding the facts of the case or evidence. As such, in addition to the reasons outlined in Subsection A, the testimony of Mr. Call must also be excluded for failing to assist the trier of fact.

**C.     As the Conclusions Reached By Steve Call are Outside his Realm of Expertise, the Testimony Must be Excluded.**

Opinions outside the areas of an expert witness's expertise are properly excluded "for lack of qualification." *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011); *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise."). While Mr. Call is a structural engineer, Mr. Call lacks the required background and expertise to provide any qualified opinions related to the Boise Hangar Collapse. According to Mr. Call, he has never participated in any hangar design, nor has he completed any evaluations of structural failures on commercial buildings or collapses:

> **Question:** Okay. Have you -- I know in your first page, your professional experience says that you've conducted structural failure evaluations. What projects have you -- what assignments have you done an evaluation of a structural failure?

> **Answer:** The -- the structural failures, there was a residence that had

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 12

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

a partial -- it had not collapsed, but the walls had pulled away several inches from the supporting roof structure. That was one that we did. We did a -- let's see. I'm trying to -- I can't think of another failure analysis. Typically it is -- it has been during the design process checking for code compliance.

**Question:** Okay. Have you ever used any sort of 3D modeling for a structural failure or collapse?

**Answer:** No, not for the -- not for collapse. We've done it for design. And so we know what requirements are there to make the building – for the building to stand up.

**Question:** Have you ever done any design or, you know, forensic -- like a civil structural failure analysis, like, for a hangar that was involved here, prior to that lawsuit?

**Answer:** No.

**Question:** Have you ever done any analysis for a pre-engineered metal building or structure?

**Answer:** I have done the foundation design for the -- for pre-engineered metal building structures.  I have not done the design of the superstructure, the steel portion. I have reviewed those and have on occasion required -- on one occasion determined that the superstructure had deficiencies and required that those be -- that the design be modified to account for -- for those and change to correct those deficiencies.

Maldonado Decl., at Exh. B., pp. 23:24-25:9.

**Question:** Okay. And then just to confirm, like a pre-engineered metal building, whether it's the foundation of a superstructure, other than this lawsuit, you've never done a post collapse –

**Answer:** Correct.

Maldonado Decl., at Exh. B, p. 26:20-24.

In addition to never having completed an evaluation of structural failures and collapses, Mr. Call has never conducted any type of design for the steel portion of a superstructure, such

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

(CASE NO. 1:24-C-00319-BLW) - PAGE 13

as the at-issue Hangar.  Importantly, at no time, outside of this Lawsuit, has Mr. Call evaluated a superstructure "post collapse", specifically, the causation of a failure or collapse of a superstructure.  This more than likely is the reasoning for why Mr. Call failed to conduct any analysis as to causation, as outlined in Subsection A of this Memorandum.  As Mr. Call does not have the requisite knowledge or expertise to complete an analysis or evaluation as to the causation of the at-issue Hangar's Collapse, the testimony of Mr. Call must be stricken pursuant to Federal Rule of Evidence 702.

**D.    As the Conclusions Reached by Steve Call are Legal Conclusions within the Province of the Court, the Testimony Must be Barred.**

As a general rule, testimony in the form of an opinion or inference otherwise admissible is "not objectionable because it embraces an ultimate issue" to be decided by the trier of fact.  *See* Fed. R. Evid. 704(a).  "That said, an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court."  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding expert testimony labeling conduct as "wrongful" or "intentional," but allowing testimony on "industry standards" and "factual corporate norms").

Here, Mr. Call has invaded the role of both the jury and the Court by opining that the actions of SBS were "willful, intentional, and reckless" and that the "willful and reckless" actions of SBS "proximately caused" the deaths of the [deceased].  *See* Maldonado Decl., at Exh. A, p. 17.  Mr. Call further claims that there is "clear and convincing evidence" that SBS engaged in conduct "knowing that injury or death to the [deceased] was substantially likely to

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 14

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

occur." *Id*. Ultimately concluding that SBS was "negligent". *Id*. at pp. 26. Each of the conclusions asserted by Mr. Call contains an opinion on the ultimate issue of law and/or the applicability of a legal standard. As such, having violated Federal Rule of Evidence 702 and 704, all conclusions and statements asserted by Mr. Call must be excluded, to the extent the opinions relate to SBS. As this would result in a full exclusion of Mr. Call's conclusions related to SBS, all other testimony by Mr. Call must likewise be excluded.

**E.    To the Extent that Steve Call's Testimony is not Excluded in its Entirety, it Must be Limited to Opening Opinions Only, as Mr. Call Failed to Issue any Rebuttal Report.**

Pursuant to Idaho Local Federal Court Rule, "[e]xcept for good cause shown, the scope of subsequent testimony by an expert witness *must be limited* to those subject areas identified in the disclosure report or through other discovery such as a deposition." LCR 26.2. Under Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure, rebuttal expert testimony is permitted only when it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." The deadline for the disclosure of expert witness rebuttal reports was on February 12, 2026. Maldonado Decl., at ¶ 3. Steve Call issued no expert witness rebuttal report to any of the Defendants' expert witnesses. *Id*. Since the lapse of the deadline, SBS has conducted the expert witness deposition of Mr. Call. *Id*. As such, SBS requests that the Court, pursuant to the Local and Federal Rules, to the extent the testimony of Steve Call is not excluded, that the testimony of Mr. Call be limited to the opinions contained within his opening expert witness report.

## CONCLUSION

For the foregoing reasons, the Court is well within its discretion under Federal Rule of

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 15

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

Evidence 702, 704, and *Daubert* to exclude the expert witness testimony of Steve Call for failure to provide any testimony that is relevant and/or helpful to the trier of fact.  Should the Court not exclude the testimony of Mr. Call in its entirety, SBS requests that, in the alternative, the testimony of Mr. Call be limited to the testimony which the Court deems to meet the legal standards outlined within the Memorandum above.

Dated: April 21, 2026

GORDON      REES      SCULLY
MANSUKHANI, LLP


By:*/s/ Meredith L. Thielbahr*
    */s/ David W. Lloyd*
    */s/ Grace Maldonado*

Gordon Rees Scully Mansukhani, LLP
Meredith L. Thielbahr, ISB 9733
David W. Lloyd, ISB 5501
Grace Maldonado, ISB 11461
999 W. Main Street, Suite 100
Boise, ID  83702
T: (208) 489-9095
mthielbahr@grsm.com
dlloyd@grsm.com
gmaldonado@grsm.com

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095

(CASE NO. 1:24-C-00319-BLW) - PAGE 16

# CERTIFICATE OF SERVICE

On April 21, 2026, I caused copies of the foregoing document to be served via electronic mail on the parties listed below as follows, which is the last known address for the listed party:

Enrique G. Serna, ISB 12114
Serna & Associates, PLLC
950 W. Bannock Street, Suite 1100
Boise, ID 83702
(210) 865-5800
enrique@serna-associates.com

Jane Gordon, ISB 92433
Jane Gordon Law
1004 West Fort Street
Boise, ID 83702
(208) 391-4747
jane@JaneGordonLaw.com

James D. Nelson, ISB 08227
Anne Cohen, ISB
Betts, Patterson & Mines, P.S.
One Convention Place
701 Pike Street, Suite 1025
Seattle, WA  98101-3915
(206) 292-9988
jnelson@bpmlaw.com
acohen@bpmlaw.com
cerickson@bpmlaw.com
tcosimo@bpmlaw.com
amcgee@bpmlaw.com
dmaughan@bpmlaw.com
dmarsh@bpmlaw.com

/s/ Grace Maldonado
Grace Maldonado, Idaho Bar No. 11461

DEFENDANT STEEL BUILDING SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT EXPERT WITNESS TESTIMONY OF STEVE CALL

(CASE NO. 1:24-C-00319-BLW) - PAGE 17

**GORDON REES SCULLY MANSUKHANI, LLP**
999 W. Main Street, Suite 100
Boise, ID 83702
Telephone: (208) 489-9095